IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SPE GO HOLDINGS, INC.,

Plaintiff,

v. Civil Action No. 1:09CV66
(STAMP)

JAMES D. LAROSA and
JAMES J. LAROSA,

Defendants.

**MEMORANDUM OPINION AND ORDER
CONFIRMING THE PRONOUNCED ORDER OF THE COURT
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. Procedural History

The plaintiff, SPE GO Holdings, Inc. ("SPE GO Holdings"), filed a complaint against James D. LaRosa and James J. Larosa for breach of contract stemming from a deficiency balance that remained on an amended and restated promissory note owed to SPE GO Holdings. The defendants filed a motion to dismiss, which this Court converted into a motion for summary judgment and denied without prejudice. Following the denial of the motion to dismiss, the defendants filed an answer to the complaint. Following discovery, SPE GO Holdings then filed a motion for summary judgment, to which the defendants responded and the plaintiff replied.

After the plaintiff's motion for summary judgment was fully briefed, the plaintiff filed a motion to confirm a non-jury trial. Pursuant to this Court's order, the defendants filed a response to the motion to confirm a non-jury trial. The plaintiff then filed a response addressing the defendants' argument, raised for the

first time in their response to the motion to confirm a non-jury trial, that based upon the forum selection clause in the Deed in Lieu of Foreclosure Agreement ("DILF Agreement"), this Court is without jurisdiction to proceed in this action. This Court then directed the plaintiff to file a response solely addressing the issue of subject matter jurisdiction. The plaintiff responded, and the defendants then replied.

The parties appeared at the Wheeling point of holding court for oral argument on the motion to confirm a non-jury trial and the response thereto, at which time the undersigned judge granted the plaintiff's motion to confirm a non-jury trial and denied the plaintiff's motion for summary judgment.[1] This memorandum opinion and order hereby confirms the pronounced order of the Court and denies the plaintiff's motion for summary judgment.

## II. Facts

SPE GO Holdings is a Delaware corporation and a wholly-owned subsidiary of Textron Financial Corporation ("Textron"), which provides financing to golf courses across the United States. On or about December 19, 2001, Textron issued a line of credit up to $7,500,000.00 to Golf and Fairway, LLC ("Golf and Fairway"), a West Virginia limited liability company, in which the defendants hold management and ownership interests. As consideration for this line of credit, Golf and Fairway executed a Promissory Note. As further

[1]This ruling was confirmed in the undersigned judge's letter to counsel dated January 6, 2011.

consideration and as security for the line of credit, the defendants both signed a Guaranty Agreement, in which the defendants agreed to jointly and severally guarantee the full and timely payment of the outstanding balance available to Golf and Fairway under the line and credit, subject to certain exceptions. On or about March 29, 2002, Golf and Fairway, Textron, the defendants, and the trustees under a Deed of Trust securing payment under the line of credit, entered into a Note and Deed of Trust Modification Agreement altering terms of the payment under the Promissory Note.

Thereafter, Golf and Fairway defaulted on its obligations under the Promissory Note. Again, Golf and Fairway, Textron, the defendants, and the trustees under the Deed of Trust executed a Future Advance and Deed of Trust Modification Agreement ("Modified Agreement") dated September 28, 2007. Golf and Fairway also executed an Amended and Restated Promissory Note ("Amended Note"), promising to pay Textron the principal sum of $9,000,000.00, or so much as may be outstanding under the line of credit, together with interest. As additional security, the defendants entered into an Amended and Restated Guaranty Agreement ("Amended Guaranty Agreement"), in which they jointly and severally guaranteed the full payment of the outstanding balance made available to Golf and Fairway under the line of credit, subject to several conditions.

On or about August 1, 2008, after Golf and Fairway defaulted on its obligations under the Amended Note and the Modified

Agreement, Textron, SPE GO Holdings, Golf and Fairway, the defendants, Burning Embers Corporation, and Club Services Corporation[2] entered into the DILF Agreement. Pursuant to the DILF Agreement, Golf and Fairway executed a Deed conveying the Pete Dye Golf Club to SPE Go Holdings. The legal effect of this transfer by Golf and Fairway on SPE GO Holdings' ability to pursue a deficiency balance on the Amended Note is the fundamental disagreement between the parties in this action.

Textron subsequently foreclosed on the Pete Dye Golf Club on August 27, 2008, pursuant to its rights under both the DILF Agreement and the Deed of Trust. Textron made the highest bid at the foreclosure sale -- $7,000,000.00. Textron thereafter assigned its rights and interests in the Amended Note, the Amended Guaranty Agreement, the related loan documents, and any assets and property acquired by Textron as the highest bidder at the foreclosure sale to SPE GO Holdings. Because a deficiency balance remained on the Amended Note after the foreclosure sale, SPE GO Holdings filed the above-styled civil action against the defendants pursuant to the Amended Guaranty Agreement.

## III. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

---

[2]Burning Embers Corporation and Club Services Corporation are allegedly West Virginia corporations wholly-owned by the defendants. These corporations are not involved in this civil action.

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718-19 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should

be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

The plaintiff advances several arguments in support of its motion for summary judgment. First, the plaintiff argues that the transfer of the Pete Dye Golf Club to SPE GO Holdings pursuant to the DILF Agreement does not affect SPE GO Holdings' right to seek judgment against the defendants for the deficiency balance under the Amended Note. Specifically, the plaintiff alleges that the plain and unambiguous language of the DILF Agreement and the

related Deed prove that Textron never agreed to accept the golf course in full satisfaction of the outstanding indebtedness, nor did it affect the lender's ability to pursue a deficiency balance on the loan. Thus, the plaintiff contends that the DILF Agreement confirms SPE GO Holdings' right to pursue judgment against the defendants for the deficiency balance remaining under the Amended Note. The plaintiff points to the absence of any release language in the DILF Agreement as evidence that a complete discharge of the indebtedness secured under the loan documents was never intended by the parties.

In their previously filed motion to dismiss, the defendants asserted an accord and satisfaction defense, arguing that Textron and SPE GO Holdings accepted the Deed in full satisfaction of the debt. In its motion for summary judgment, the plaintiff argues that this accord and satisfaction defense is flawed, as it is contrary to the express provisions of the DILF Agreement confirming that a conveyance of the golf course would not constitute a complete discharge of indebtedness. Because the actual value of the golf course was unknown at the time the DILF Agreement and the Deed were executed, the plaintiff contends there is no evidence in the documents to support an argument that it intended the conveyance of the golf course to fully satisfy the outstanding indebtedness under the Amended Note. Further, the plaintiff argues that the defendants expressly waived all contractual defenses they may have had to the loan documents in the DILF Agreement.

According to the plaintiff, partial payment on an undisputed, liquidated claim cannot amount to an accord and satisfaction of the entire debt without a release or proof of additional consideration for the amount left unpaid.

Next, the plaintiff contends that since SPE GO Holdings retains the right to seek judgment against the defendants for the deficiency balance, SPE GO Holdings is entitled to the relief requested in its complaint, including: (1) judgment against the defendants, jointly and severally, in the amount of $3,007,092.10 plus pre-judgment interest; (2) post-judgment interest; and (3) costs and attorney’s fees related to this action.

In response to the plaintiff’s motion for summary judgment, the defendants contend that genuine issues of material fact exist regarding whether the DILF Agreement extinguished the indebtedness under the Amended Note and the Amended Guaranty Agreement, thereby releasing the defendants as guarantors under the loan documents. In support of this argument, the defendants reference this Court’s previous opinion converting the defendants’ motion to dismiss into a motion for summary judgment and denying it without prejudice, in which this Court found that certain provisions of the DILF Agreement create a genuine issue of material fact regarding whether the DILF Agreement extinguished the indebtedness. The defendants also argue that discovery in this action, including the depositions of the defendants and the plaintiff’s representatives, has not eliminated these genuine issues of material fact.

According to the defendants, all negotiations regarding the DILF Agreement were conducted by Ralph W. Hoyer, representing the defendants, and Robert Louis Shuman, representing the plaintiff. While Mr. Hoyer claims that the declaration of consideration and value clearly in the Deed indicates that the full amount of the note was satisfied and all obligations of the parties were extinguished, Mr. Shuman contends that the defendants still had an obligation to pay the plaintiff the sum of $9,769,038.42. Because the language of the documents is ambiguous and the two attorneys who negotiated this matter disagree as to the proper interpretation of the documents, genuine issues of material fact still exist and the motion for summary judgment must be denied.

The plaintiff bases its argument on the following language contained in the DILF Agreement:

> Survival and Non-Merger: The Parties, each and all, hereby covenant and agree that (a) the Loan Documents shall remain binding, enforceable, and of full force and effect, (b) the indebtedness, obligations, and liabilities evidence by, represented by, and/or created and arising under the Loan Documents are not and shall not be released, cancelled, terminated, novated, or extinguished by this Agreement, (c) the execution and delivery of this Agreement shall in no way, manner, or nature impact, impair, affect, or release any of the collateral and security for the Loan Documents, (d) the interest of SPE in the Property upon the consummation of the transfers to SPE from Borrower, DEC, Guarantors, and Club contemplated by and provided for in this Agreement shall not merge with the interest of Lender or SPE in the Property under the Loan Documents, it being the express intent of each and all of the Parties that such separate and distinct interests shall not merge, but shall be and remain at all times separate and distinct, notwithstanding any union of such interest(s) at any time by purchase, termination, or otherwise, and that the liens and security interests in the Property created by

> the Loan Documents shall be and remain at all times valid and continuous liens and security interests in the Property unless and until released by Lender and SPE.

(Pl.'s Mot. Summ. J., Ex. A at 86). The plaintiff also relies on similar language in the Deed:

> Grantor and Grantee hereby covenant and agree that this deed shall not merge with or into the Deed of Trust and/or Assignment and that the Deed of Trust and Assignment shall not merge with or into this deed and that it is the intent of the Grantor and Grantee that the Deed of Trust and Assignment shall remain of full force and effect and that the Deed of Trust shall remain as and continue to be and constitute a valid, perfected, first priority lien on and against the Property and that Lender shall have the right to exercise and pursue all rights and remedies against the Property as provided for under, in accordance with, and pursuant to the Deed of Trust and Assignment as Lender shall elect in its sole and absolute discretion subsequent to the execution, acknowledgment, delivery, and recording of this deed, including, without limitation, the right of foreclosure.

(Pl.'s Mot. Summ. J., Ex. A at 98). However, the following language is also contained in the Deed:

> Declaration of Consideration or Value: Under, in accordance with, and pursuant to the provisions of Article 22 of Chapter 11 of the West Virginia Code, Grantor hereby declares that the property transferred by the document to which this declaration is appended has been transferred for and in consideration of Lender's covenant not to sue or otherwise bring any action or claim against Grantor to collect on the Note, which as of the date of this deed has an aggregate outstanding balance of Nine Million Seven Hundred Sixty-nine Thousand Thirty-eight Dollars and Forty-two Cents ($9,769,038.42), and is the applicable amount upon which the applicable excise taxes should be based.

(Pl.'s Mot. Summ. J., Ex. A, at 99). The deposition testimony of the lawyers who prepared these documents reveal their opposite views as to the effect of the DILF Agreement and the Deed. In the opinion of Mr. Shuman, the DILF Agreement did not cancel any debt

or terminate any right to seek relief from the guarantors. (Shuman Dep. 37:15-38:5, Nov. 9, 2010). Mr. Hoyer, however, is of the understanding that the obligation under the Amended Note was extinguished by delivery of the Deed. (Hoyer Dep. 23:2-23:10, Sept. 15, 2010).

This Court finds that these provisions, as well as the conflicting views of the attorneys who drafted them, create a genuine issue of material fact regarding whether the DILF Agreement extinguished the indebtedness under the Amended Note and the Amended Guaranty Agreement, thereby releasing the defendants as guarantors under the loan documents, as well as the intention of the parties in entering the Deed and the DILF Agreement.

The defendants' reliance on this Court's denial of its motion to dismiss, which the Court converted into a motion for summary judgment, is misplaced. This Court based its decision on the motion to dismiss upon the arguments and evidence that had been provided to the Court up until that time, and held that summary judgment was inappropriate at that juncture. This Court's ruling on the motion to dismiss indicated that the parties should proceed with discovery -- it did not guarantee that the same genuine issues of material fact would remain in existence and unresolved, supporting the denial of a later-filed motion for summary judgment.

Where a reasonable jury could draw different conclusions as to liability from the facts in evidence, summary judgment must be denied. See Pierce v. Ford Motor Co., 190 F.2d 910, 915 (4th Cir.

1951). The plaintiff's claims present genuine factual issues that cannot be properly decided by this Court at this time.[3] Based upon the arguments and evidence provided to the Court, whether the Deed and the DILF Agreement extinguished the guarantors' obligations under the Amended Note and Amended Guaranty Agreement is a genuine issue of material fact that may be reasonably resolved in favor of either party. Accordingly, summary judgment must be denied.

## V. Conclusion

For the reasons stated above, the plaintiff's motion for summary judgment is DENIED, confirming the pronounced order of the Court.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.

DATED: January 12, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE

[3]Denying a summary judgment motion is appropriate even where the parties request a bench trial, and the Court ultimately becomes the trier of fact. See e.g. Stratton Oakmont, Inc. v. Vaswani Place Corp., 188 F.3d 503, 503 (4th Cir. 1999) (denying parties' cross motions for summary judgment and proceeding to bench trial) (unpublished); Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1272 (4th Cir. 1996) (recognizing that case could proceed to non-jury trial after a denial of both parties' summary judgment motions); Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 372 F. Supp. 2d 833, 834 (E.D. Va. 2005) (holding a bench trial following various summary judgment rulings).